**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | Criminal Action No. 22-cr-00387-LKG |
| DARNELL PALMER, | ) | Dated: September 29, 2026 |
| Petitioner. | ) | |

**MEMORANDUM OPINION**
**ON PETITIONER' S MOTION TO VACATE SENTENCE**

## I. INTRODUCTION

The Petitioner *pro se*, Darnell Palmer, has filed a motion to vacate his sentence, pursuant to 28 U.S.C. § 2255. ECF No. 71. The Government has also filed a motion to dismiss the petition. ECF No. 75. No hearing is necessary to resolve the motions. *See* L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court: (1) **DENIES** the Petitioner's motion to vacate (ECF No. 71); (2) **GRANTS** the Government's motion to dismiss the petition (ECF No. 75); and (3) **DISMISSES** the petition.

## II. BACKGROUND AND PROCEDURAL HISTORY[1]

The Petitioner *pro se*, Darnell Palmer, is currently serving an 84-month sentence of imprisonment, after having been convicted of possession with intent to distribute a controlled substance, in violation of 18 U.S.C. 841(a)(1) and (b)(1)(C) (Count 1), and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 3). ECF No. 54.

As background, on November 9, 2022, a Federal Grand Jury returned an Indictment against Mr. Palmer, charging him with: (1) possession with intent to distribute a controlled substance, in violation of 18 U.S.C. 841(a)(1) and (b)(1)(C) (Count 1); (2) possession of a firearm in furtherance

[1] The facts recited in this Memorandum Opinion are taken from the Petitioner's motion to vacate sentence; the Government's response in opposition thereto and motion to dismiss; the Indictment; the Presentence Investigation Report; and the Judgment. ECF Nos. 1, 38, 39, 42, 54, 71 and 74.

of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and (3) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 3). ECF No. 1. Thereafter, the parties entered into a Plea Agreement, whereby Mr. Palmer agreed to plead guilty to possession with intent to distribute a controlled substance (Count 1), and felon in possession of a firearm and ammunition (Count 3). ECF Nos. 39 and 40.

Pursuant to the Plea Agreement, the parties agreed that "there is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level." ECF No. 39 at ¶ 7. The parties also agreed that "[o]ther than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guideline range." *Id*. at ¶ 8.

In addition, the Plea Agreement provides that: "The sentence imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guideline stipulation in this agreement." *Id*. at ¶ 19. The Plea Agreement also cautions that "[n]either the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guideline range or sentence the defendant will receive." *Id*. Lastly, the Plea Agreement provides that "[t]he defendant agrees that no one has made such a binding prediction or promise." *Id*.

On March 7, 2024, the Court held a plea hearing, during which Mr. Palmer pleaded guilty to possession with intent to distribute a controlled substance (Count 1) and felon in possession of a firearm and ammunition (Count 3). ECF No. 38. During the plea hearing, the Court conducted a colloquy with Mr. Palmer to assess his understanding of the charges, maximum penalties and the Plea Agreement. *See generally* ECF No. 67.

Notably, the Court had the following exchanges with Mr. Palmer during the plea hearing:

> THE COURT: Mr. Palmer, have you had a chance to read and discuss the
>
> plea agreement with your attorney before you signed it? THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And have you fully reviewed each and every term of this plea agreement with your counsel?
>
> THE DEFENDANT: Yes, ma'am.

> THE COURT: And do you understand the plea agreement? THE DEFENDANT: Yes, ma'am.

*Id.* at 11-12.

> THE COURT: My next question for you is, has anyone made any promises or assurances to you that are not contained in your plea agreement?
>
> THE DEFENDANT: No, ma'am.

*Id.* at 12.

The Court also had the following exchanges with Mr. Palmer regarding sentencing:

> THE COURT: Mr. Palmer, do you understand that the Court may impose a sentence that's different than some of the recommendations in your plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And, in fact, we'll have another proceeding which we'll talk about sentencing in more detail. And my next question for you, Mr. Palmer, is are you pleading guilty today of your own freewill because you are, in fact, guilty of the offenses in Counts One and Three?
>
> THE DEFENDANT: Yes, ma'am.

*Id.* at 13.

> THE COURT: . . . Mr. Palmer, we'll have a separate hearing on sentencing, which will be much later. But I do want to talk briefly about sentencing and some of the information contained in your plea agreement which reflects what your attorney and the government believe might be the applicable guidelines for the sentencing guidelines . . . What I first want you to know is your sentence will be determined by the Court after consulting the United States Sentencing Guidelines. These are advisory guidelines that I will consider. I will also consider departures for those guidelines, and I will also consider certain factors that Congress requires me to consider under federal law, that's in Title 18 U.S.C. 3553(a). Have you had a chance to talk with your attorney about how the sentencing guidelines might apply to your case?
>
> THE DEFENDANT: Yes, ma'am . . .
>
> THE COURT Mr. Palmer, my next question is for you. You understand that this Court will not be able to finally determine the

> guideline range for your case until after I have received and reviewed the presentence report?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. And do you also understand that you and your attorney and the government will also have a chance to challenge and comment on the information in your presentence report?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you understand that I will take into account anything that you and your attorney and the government have to say about that report when I consider your sentence at a sentencing hearing?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Mr. -- Mr. Palmer, do you understand that any criminal history that you may have will also affect the computation of your sentence?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you understand that the government and your counsel have not reached an agreement about your criminal history in this case?
>
> THE DEFENDANT: Yes, ma'am. . .
>
> THE COURT: Mr. Palmer, do you understand that the sentence that I ultimately impose in your case may be different from the estimate you received from your attorney?
>
> THE DEFENDANT: Yes, ma'am.

*Id.* at 18-21.

The Presentence Investigation Report ("PSR") states, and the parties agreed, that Counts 1 and 3 group and that Count 1 will be used for calculating the Guidelines range, pursuant to USSG §§ 3D1.2(c) and 3D1.3(a). ECF No. 42 at 6. The PSR also states that the base offense level for Count 1 is 24, pursuant to USSG § 2D1.1(a)(5) and (c)(8), and that a 2-level enhancement applies,

pursuant to USSG § 2D1.1(b)(1). *Id*. at 6-7. And so, the adjusted base offense level for Count 1 is 26. *Id*. at 7.

In addition, the PSR states that a 3 level reduction for acceptance of responsibility applies, pursuant to USSG 3E1.1(a) and (b). *Id*. at 7. Given this, the total offense level is 23. *Id*.

Lastly, the PSR contains Mr. Palmer's criminal history, including the following juvenile adjudications:

| **Date of Referral** | **Charge/Court** | **Date Sentence Imposed/Disposition** | **Guideline** | **Pts** |
| --- | --- | --- | --- | --- |
| 07/24/2017 (Age 16) | Robbery/ Circuit Court of Maryland for Montgomery County, sitting as a juvenile court, Rockville, MD; Docket No.: 06-J-17050829 | 12/07/2017: Probation to the Maryland Department of Juvenile Services 08/21/2019: Case closed by court | 4A1.1(c) | 1 |

Attorney representation is unknown. The specifics of the offense are not available.

| | | | | |
| --- | --- | --- | --- | --- |
| 11/09/2017 (Age 16) | Assault 2nd Degree/Battery/ Circuit Court of Maryland for Montgomery County, as a juvenile court, Rockville, MD; Docket No.: 06-J-17-051122 | 03/08/2018: Probation to the Maryland Department of Juvenile Services 08/21/2019: Case closed sitting by court | 4A1.1(c) | 1 |

Attorney representation is unknown. According to the defendant's social history investigation report for this case, on October 22, 2017, at approximately 1640 hours, the victim was walking to a 7 Eleven store located in Germantown, Maryland, and was approached by a group of teenage black males asking him for money and pestering him. The victim told the suspects he did not have any money and to leave him alone. The suspects then kept trying to get money and started a fight with the victim. The victim tried to run away in the parking lot of 7 Eleven and fell. The suspects then jumped on the victim while he was down and punched and kicked him. After a few moments of this,

> the suspects all ran away. The victim sustained a broken leg as a result of the attack and was transported to Germantown Emergency Care for treatment.
>
> A security video was obtained from 7 Eleven, which showed the incident. The video was shown to the school resource officer and security officer at Northwest High School, who both positively identified the defendant and his brother as two of the suspects.
>
> On November 9, 2017, the defendant's mother brought the defendant and his brother to the district station to turn themselves in. The defendant was advised of his rights and provided a recorded statement stating he chased the victim and punched him several times when he was down on the ground. The defendant would not identify any of the other people involved. He further stated the victim picked up his brother's phone after he dropped it and would not give it back to his brother, which is why everyone chased him.

| | | | | |
|---|---|---|---|---|
| 02/11/2018 (Age 17) | Possession of Marijuana Less Than 10 Grams/ Circuit Court of Maryland for Montgomery County, sitting as a juvenile court, Rockville, MD; Docket No.: 06-J-18050340 | 06/25/2018: Probation to the Maryland Department of Juvenile Services 08/21/2019: Case closed by court | 4A1.1(c) | 1 |

> Attorney representation is unknown. The specifics of the offense are not available.

*Id*. at ¶¶ 29-32.

The PSR also provides that Mr. Palmer's prior adult criminal convictions include convictions for petit larceny, second degree assault, and robbery and conspiracy to commit armed robbery, respectively. ECF No. 42 at ¶¶ 35-37.

In addition, the PSR provides that Mr. Palmer's subtotal criminal history score is nine and that one point is added, because his criminal history points total seven or more points. *Id*. at ¶¶ 38-40. Given this, Mr. Palmer's criminal history score is 10, resulting in a criminal history Category V. *Id*. And so, the PSR provides that, based on a total offense level of 23 and a criminal history of Category V, the Guideline imprisonment range is 84 to 105 months. *Id*. at ¶ 80.

On October 29, 2024, the Court held a sentencing hearing. ECF No. 52. During the sentencing hearing, the Court adopted the Sentencing Guidelines calculations contained in the PSR. *Id.* After considering the Defense's objection to the consideration of Mr. Palmer's juvenile criminal history, the Court also concluded that it was "not even going to refer to the juvenile criminal cases." ECF No. 64 at 28. But the Court noted its concern about several adult convictions when Mr. Palmer was 18 years old. *Id*. at 28. In this regard, the Court observed that Mr. Palmer is "very young, but in a very short period of his life as a teen to young adult, he's had multiple encounters with the criminal justice system, issues with drugs and guns," and then the instant case with the same aspects." *Id*. at 28-29. And so, the Court further observed that: "[F]rankly, there is a pattern here, at least in terms of what happened prior to this particular case, again, over a relatively short period of time and at a very young age, true, but there is a lot of criminal history over just a few []years." *Id*. at 29.

The Court also addressed the factors that informed the sentenced imposed in the case. Specifically, the Court observed that "[f]entanyl has a particularly horrible record and history in our community. It is devastating our community, particularly young people such as Mr. Palmer." *Id.* at 48. The Court also expressed concerns about Mr. Palmer's criminal history and the volume of fentanyl pills at issue in the case. *Id.* at 49. In addition, the Court observed that Mr. Palmer's young age was a mitigating factor. *Id.* at 49-50; *see also id.* at 50 (referring again to Petitioner's "relatively young age at the time of the offense"). And so, the Court sentenced Mr. Palmer to 84-months imprisonment for Count 1 and to 84-months imprisonment for Count 3, to be served concurrently, and followed by a term of three years of supervised release for Count 1 and three years for Count 3, to run concurrently. ECF No. 54. This sentence falls at the bottom of the advisory Guidelines range for this case. *Id.*

On August 20, 2025, Mr. Palmer filed the pending motion to vacate sentence, pursuant to 28 U.S.C. § 2255. ECF No. 71. The Government filed a response in opposition to this motion, and a motion to dismiss the petition, on November 14, 2025. ECF No. 75.

The Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Motions To Vacate Sentence

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence," if the prisoner can show "that the

sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). To obtain relief on a motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255, a defendant must establish either an error of "constitutional or jurisdictional magnitude," or an error which "could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice." *United States v. Shaid*, 937 F.2d 228, 232 & n.7 (5th Cir. 1991) (citing, *e.g.*, *Hill v. United States*, 368 U.S. 424, 428 (1962)). Errors of law and errors of fact do not provide a basis for collateral attack unless the error constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979). And so, a defendant who collaterally attacks his sentence or conviction pursuant to 28 U.S.C. § 2255 bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. *See Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967); *Miller v. United States,* 261 F.2d 546, 547 (4th Cir. 1958).

Lastly, when a convicted defendant files a Section 2255 motion, the Court must hold a hearing "unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief. 28 U.S.C. § 2255(b); *see also, United States v. Flood*, 2026 WL 2342563, * 2 (4th Cir. Aug. 13, 2026). And so, the Court must hold an evidentiary hearing if the record, drawing all reasonable inferences and resolving genuine disputes in the defendant's favor, shows that the defendant could satisfy both Strickland prongs. *Flood*, 2026 WL 2342563, * 5.[2]

**B. Ineffective Assistance Of Counsel**

"The Six Amendment provides that the accused shall have the right to assistance of counsel in all criminal prosecutions." *United States v. Brown*, 137 F.4th 248, 256 (4th Cir. 2025) (quoting *Missouri v. Frye*, 566 U.S. 134, 138 (2012)). Given this, the Supreme Court has held that a defendant may show constitutional error by establishing ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] The Fourth Circuit has recognized that the Court has "three possible methods, depending upon the facts, [for] disposition of motions under Section 2255:" summary disposition, disposition on an expanded record or disposition after an evidentiary hearing. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970). Summary disposition of a Section 2255 motion is appropriate where "the files and records conclusively show that the prisoner is entitled to no relief." *Id*.

When bringing an ineffective-assistance claim, the defendant must show two things: (1) that defense counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Flood*, 2026 WL 2342563, * 4. With regards to the performance prong of this test, the United States Court of Appeals for the Fourth Circuit has held that a convicted defendant cannot simply assert that counsel was ineffective; he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). With regards to the prejudice prong, the Fourth Circuit has also held that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland,* 466 U.S. at 694).

Relevant to the pending motion to vacate sentence, the Fourth Circuit has held that a defendant who challenges a conviction entered after entering a guilty plea "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[3] *Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297 (4th Cir. 1992) (quoting *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988)); *see also Hill v. Lockhart*, 474 U.S 52, 59 (1985) (adopting this standard); *accord Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). In this regard, the Court must also consider whether there was an adequate showing that the defendant, if properly advised, would have opted to go to trial. *Lee v. United States*, 582 U.S. 357, 364 (2017). And so, "[w]hen it comes to the prejudice prong, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. If a defendant fails to meet his burden of proving such prejudice, the Court need not consider the performance prong of the two-part *Strickland* test. *Fields*, 956 F.2d at 1297.

## IV. ANALYSIS

Mr. Palmer has moved to vacate his sentence upon the following three grounds:

---

[3] The Fourth Circuit has also held that, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see also United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) ("[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,'. . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy."); *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("[W]hen a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process.").

> (1) At the time of sentencing and of the offense I was under the age of 25 and, therefore, would have been eligible for a downward departure under the November 1, 2024 amendments to the Sentencing Guidelines under USSG 5H1.1. Counsel failed to ask for a downward departure and so I was sentenced with my Guidelines range. My plea did not include agreement to a specific sentence.
>
> (2) Counsel was in effective because he induced me to plea by promising a lower sentence that I received. During my conversation with defense counsel he promised me a lower sentence than what I received from the court. If I am allowed a 2255 hearing I should be able to provide copies of correspondence with trial counsel on this ground.
>
> (3) Counsel was ineffective because he did not inform me that my juvenile history would be used against me for my guidelines. When the PSR came back I disagreed with the guidelines and wanted to argue but attorney believed judge would see the increase in guideline range due to juvenile history and would sentence me under the guidelines. Reasoning why we recommended 36 months.

ECF No. 71 at 4-5 and 7. And so, Mr. Palmer requests that the Court vacate his sentence and appoint counsel to represent him in this matter. *Id*. at 13.

The Government counters that Mr. Palmer is not entitled to this relief, because none of the grounds to vacate his sentence satisfy the applicable standards under Section 2255. ECF No. 75. Specifically, the Government argues that Mr. Palmer cannot satisfy either prong of the *Strickland* test with regards to ground two of his motion to vacate, because his claim that Defense Counsel induced him to enter a guilty plea, by promising a lower sentence than he ultimately received, is directly contradicted by his sworn statements during the plea hearing. *Id*. at 17-18. The Government also argues that Mr. Palmer cannot satisfy either prong of the *Strickland* test with regards to ground three of his motion, because his claim that Defense Counsel failed to advise that his juvenile criminal history would be considered during the sentencing hearing is also contradicted by the record evidence. *Id*. at 18-20. Lastly, the Government argues that ground one of Mr. Palmer's motion also fails the *Strickland* test, because Defense Counsel could not have relied upon the new amendments to USSG § 5H1.1 under the terms of the parties' Plea Agreement and Mr. Palmer was not prejudiced by any failure to raise this amendment during the sentencing hearing. *Id*. at 20-24. And so, the

Government requests that the Court deny Mr. Palmer's motion to vacate sentence and dismiss the petition. *Id*. at 25.

For the reasons that follow, the record evidence in this case shows that Mr. Palmer was not prejudiced by Defense Counsel's decision not to raise the November 1, 2024, amendment to the policy statement for USSG § 5H1.1 during the sentencing hearing. The record evidence also makes clear that Mr. Palmer was not prejudiced by any promise made by Defense Counsel regarding his sentence, because he acknowledged under oath during the plea hearing that he understood that the Court could impose a sentence that is greater than any estimate by his attorney. Lastly, the record evidence also makes clear that Mr. Palmer was not prejudiced by any failure by Defense Counsel to advise that his juvenile criminal history would be considered by the Court during the sentencing hearing, because the Plea Agreement made clear that the Court could consider this evidence and the Court decided not to consider Mr. Palmer's juvenile convictions in determining his sentence. And so, the Court: (1) DENIES the Petitioner's motion to vacate (ECF No. 71); (2) GRANTS the Government's motion to dismiss the petition (ECF No. 75); and (3) DISMISSES the petition.

**A. Mr. Plamer Has Not Shown That He Was Prejudiced By Defense Counsel's Failure To Raise The Amendments To USSG § 5H1.1**

As an initial matter, Mr. Palmer has not shown that he was prejudiced by Defense Counsel's decision to not raise the new amendments to the policy statement for USSG § 5H1.1 during the sentencing hearing held in this matter. To prevail on his motion to vacate sentence based upon ineffective assistance of counsel, Mr. Palmer must show that: (1) Defense Counsel's performance was deficient and (2) the deficient performance prejudiced him. *United States v. Flood*, 2026 WL 2342563, * 4 (4th Cir. Aug. 13, 2026). In his motion, Mr. Palmer argues that Defense Counsel was ineffective, because Defense Counsel failed to ask for a downward departure during the sentencing hearing, even though Mr. Palmer was under the age of 25 at the time of sentencing, and he would have been eligible for a downward departure under the November 1, 2024 amendments to USSG § 5H1.1. ECF No. 71 at 4.

The amendments at issue are set forth in Amendment 829, which became effective on November 1, 2024, three days after Mr. Palmer's sentencing hearing. The amendments to U.S.S.G. § 5H1.1 modified the policy statement at that time as follows:

Section 5H1.1 is amended by striking the following:

> Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration. Physical condition, which may be related to age, is addressed at §5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).";

and inserting the following:

> Age may be relevant in determining whether a departure is warranted. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.
>
> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.
>
> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. Age-appropriate interventions and other protective factors may promote desistance from crime. Accordingly, in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing.
>
> Physical condition, which may be related to age, is addressed at §5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).

U.S.S.G. § 5H1.1, Amendment 829.

The purpose of this amendment was to ensure thar the Sentencing Guidelines recognize that cognitive changes lasting into the mid-20s affect individual behavior and culpability and that certain risk factors may contribute to youthful involvement in the criminal justice system.

U.S.S.G. § 5H1.1, Amendment 829. But the Sentencing Commission elected not to make this amendment retroactive. *Id*. And so, this Court has previously rejected claims for relief based upon Amendment 829, when sentencing occurred before the amendment's effective date. *See, e.g., United States v. Grossman*, No. 18-CR-348-ABA, 2025 WL 3157541, at *7 (D. Md. Nov. 12, 2025) ("Because Judge Blake already took Mr. Smoot's age into account when determining his sentence, the Court will not grant relief on th[e] basis [of Amendment 829] either.").

In this case, the record evidence makes clear that Court carefully considered Mr. Palmer's age, notwithstanding the fact that the new policy statement for U.S.S.G. § 5H1.1 was not yet in effect, in determining his sentence. Notably, the transcript of the sentencing hearing shows that the Court contemplated Mr. Palmer's relatively young age at the time of the offenses at issue, and his difficult childhood, when considering his personal history and characteristics. ECF No. 64 at 26. Specifically, the Court observed during the sentencing hearing that:

> In terms of the mitigating factors, Mr. Palmer's history and characteristics, there are a couple of things that the Court is – is notable. Firstly, his age. He was both a very young man when the crime at issue was committed and remains a very young man today . . . . . There is also a personal history in this case of abuse, which always is troubling for the Court to hear, and the Court is appreciative of the idea that abuse can impact decision making. . . So, in light of those mitigating factors, I am going to impose a sentence within the guideline range, but it will be on the lower end of that guideline range.

ECF No. 64, at 49-52. And so, the Court considered Mr. Palmer's youth to be a mitigating factor, and the Court lowered his sentence to the bottom of the applicable Guidelines range, due to, among other things, Mr. Palmer's youth at the time of the offenses and at the time of sentencing. *Id*.

The Court also observes that, even if the new policy statement for USSG § 5H1.1 had been in effect at the time of Mr. Palmer's sentencing hearing, this amendment would not have been binding on the Court. *United States v. Booker*, 543 U.S. 220 (2005). Given this, the Court would have retained the discretion to determine what weight to afford Mr. Palmer's age in determining the proper sentence in this case, regardless of when the sentence hearing occurred. And so, a continuance of the sentencing hearing until on or after November 1, 2024, would not have altered the sentence imposed by the Court.

Given this, Mr. Palmer has not meet his burden to show that his sentence would have been different had Defense Counsel raised the amendments to the policy statement for U.S.S.G.

§ 5H1.1 during the sentencing hearing. And so, the Court DENIES Mr. Palmer's motion to vacate on this ground.

### B. Mr. Palmer Has Not Shown That He Was Prejudiced By Any Promise Of A Lower Sentence

Mr. Palmer's second ground for vacating his sentence is also unconvincing. In his motion to vacate sentence, Mr. Palmer next argues that the Court should vacate his sentence, because Defense Counsel promised that he would receive a lower sentence than the sentence ultimately imposed by the Court. ECF No. 71 at 5. This argument is belied by the contemporaneous record evidence in this case for several reasons.

First, during the plea hearing held on March 7, 2024, the Court asked Mr. Palmer if he had been persuaded to plead guilty based on any promises made to him outside the Plea Agreement and he responded under oath that no such promises had been made. ECF No. 67 at 12 (THE COURT: My next question for you is, has anyone made any promises or assurances to you that are not contained in your plea agreement? THE DEFENDANT: No, ma'am.). Second, the Plea Agreement, which the Court carefully reviewed with Mr. Palmer during the plea hearing, also makes clear that Mr. Palmer's sentence was within the sole discretion of the Court and provides:

> The sentence to be imposed is within the sole discretion of the Court. . . . The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in [the plea agreement,] or if the Court imposes any sentence up to the maximum allowed by statute, [Mr. Palmer] will remain bound to fulfill all of the obligations under [the plea agreement]. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what the guidelines range or sentence the [Mr. Palmer] will receive [Mr. Palmer] agrees that no one has made such a binding prediction or promise.

ECF No. 39 at 8; *see also,* ECF No. 67 at 13, 18 (Mr. Palmer acknowledging that he understood this term of the Plea Agreement during the plea hearing.)

In addition, the record evidence makes clear that the Court explained during the plea hearing that Mr. Palmer's sentence could be different than any estimate that he received from Defense Counsel. ECF No. 67 at 21 (THE COURT: . . . Mr. Palmer, do you understand that

the sentence I ultimately impose in your case may be different from the estimate you received from your attorney? THE DEFENDANT: Yes, ma'am.). And so, to the extent that Mr. Palmer could show that Defense Counsel promised him a lower sentence, the record evidence makes clear that he was not prejudiced by such a promise, because Mr. Palmer understood that the Court was not bound by this promise and could impose a sentence that differed from Defense Counsel's estimate. ECF No. 67 at 21.

Mr. Palmer's sworn declarations to the Court during the plea hearing "carry a strong presumption of verity." *Lemaster*, 403 F.3d at 221. Given this, any evidence that he could put forward to support the second ground for vacating is sentence would be directly contradicted by these sworn statements. And so, the Court also DENIES Mr. Palmer's motion to vacate sentence on this ground.

**C. Mr. Palmer Has Not Shown That He Was Prejudiced By Any Consideration Of His Juvenile Criminal History**

Mr. Palmer similarly fails to show that he was prejudiced by any consideration of his juvenile criminal history during the sentencing hearing. In his motion to vacate sentence, Mr. Palmer argues that his counsel was ineffective, because Defense Counsel did not inform him that his juvenile criminal history would be considered by the Court in determining the sentence in this case. ECF No. 71 at 7. But, to the extent that Defense Counsel failed to inform Mr. Palmer that his juvenile record could be considered by the Court, the record evidence shows that he was not prejudiced by this decision, because Mr. Palmer was aware that the entirety of his criminal history could be considered by the Court for the purpose of sentencing.

Notably, the parties' Plea Agreement makes clear that the parties had "no agreement as to [Mr. Palmer's] criminal history and [Mr. Palmer] understands that [his] criminal history could alter [his] offense level." ECF No. 39 at 6. During the plea hearing, the Court also inquired about Mr. Palmer's understanding of the impact that his criminal history could have on his sentence and Mr. Palmer stated under oath that he understood that his criminal history could be considered by the Court in determining his sentence. ECF No. 67at 20-21 (THE COURT: . . . Mr. Palmer, do you understand that any criminal history that you may have will also affect the computation of your sentence? THE DEFENDANT: Yes, ma'am. THE COURT: And do you understand that the government and your counsel have not reached an agreement about your criminal history in this case? THE DEFENDANT: Yes, ma'am.).

As the Government correctly observes in its response in opposition to Mr. Palmer's motion, the Court made no distinction between Mr. Palmer's juvenile and adult criminal history in explaining that his criminal history would impact his sentence. And so, again, Mr. Palmer's sworn declarations to the Court have a "strong presumption of verity," which Mr. Palmer has not overcome in his motion to vacate sentence. *Lemaster*, 403 F.3d at 221.

The record evidence also makes clear that Mr. Palmer was not prejudiced by any failure by Defense Counsel to warn him that his juvenile criminal history would be considered by the Court, because the Court did not, in fact, consider his criminal convictions before the age of 18 in determining his sentence. *See* ECF No. 64 at 28 (THE COURT: "I am not even going to refer to the juvenile cases."). Rather, the Court observed during the sentencing hearing that Mr. Palmer had several *adult* convictions when he was 18 years old and that, Mr. Palmer is "very young, but in a very short period of his life as a teen [of 18 years old] to young adult, [he has] had multiple encounters with the criminal justice system, issues with drugs and guns." *Id*. at 28-29.

Given this, the record evidence does not support Mr. Palmer's claim that his sentence would have been lower, but for the actions of Defense Counsel. And so, the Court also DENIES Mr. Palmer's motion to vacate sentence on this final ground.

**D. An Evidentiary Hearing Is Not Warranted**

As a final matter, the Court declines to hold an evidentiary hearing before resolving Mr. Palmer's motion to vacate sentence. When a convicted defendant files a Section 2255 motion, the Court must hold a hearing "unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief. 28 U.S.C. § 2255(b); *see also United States v. Flood*, 2026 WL 2342563, * 2 (4th Cir. Aug. 13, 2026). But, as discussed above, the record evidence here shows that Mr. Palmer is not entitled to any relief, because he was not prejudiced by any of the alleged errors by Defense Counsel. *Flood*, 2026 WL 2342563, * 5 (4th Cir. Aug. 13, 2026). For similar reasons, the Court declines to appoint counsel to represent Mr. Palmer in connection with his Section 2255 habeas petition. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (It is well settled that there is no constitutional right to appointment of counsel in a habeas case.); *see also, Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994) (The interests of justice does not require the Court to appoint counsel when an evidentiary hearing on the habeas petition is not

needed to resolve this matter.); Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts. And so, the Court also DENIES Mr. Palmer's motion to appoint counsel.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** the Petitioner's motion to vacate (ECF No. 71);

(2) **GRANTS** the Government's motion to dismiss the petition (ECF No. 75); and

(3) **DISMISSES** the petition.[4]

**IT IS SO ORDERED.**

A separate Order shall issue.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

[4] A certificate of appealability shall not be issued, because Mr. Palmer has not shown that jurist of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurist of reason would find it debatable whether the district court was correct in its procedural ruling. *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001).